## MITCHELL v. UNITED STATES et al.

### No. 161 of 1945.

District Court, E. D. Pennsylvania.

Dec. 13, 1946.

80

Abraham E. Freedman, of Freedman, Landy & Lorry, all of Philadelphia, Pa., for libellant.

Thomas E. Byrne, of Krusen, Evans and Shaw, all of Philadelphia, Pa., for respondents.

BARD, District Judge.

This action was brought by Benjamin G. Mitchell against the United States of America and the War Shipping Administration for damages and maintenance and cure.

I make the following special

Findings of Fact.

1. The libellant is Benjamin G. Mitchell.

2. The respondents are the United States of America and the War Shipping Administration.

3. The merchant vessel "John Philip Sousa" was at all material times owned by the United States of America through the War Shipping Administration. She was operated by Wessel, Duval & Co., Inc., under an agreement entered into between that company and the War Shipping Administration.

4. Libellant enlisted in the United States Army in June, 1942, and was honorably discharged in March, 1943, because of over-age.

5. After his discharge from the United States Army, libellant secured a position in industry as an inspector of airplane parts, and was employed in that capacity until December, 1943.

6. In January, 1944, libellant entered the United States Merchant Marine service as a messman.

7. On July 28, 1944, after having completed two previous voyages, libellant signed on board the "John Philip Sousa" as a messman.

8. Shortly after going aboard the "John Philip Sousa," libellant was assigned by the vessel's steward to an upper bunk in the steward's department forecastle. This bunk was defective, as it had a round piece of metal pipe, two or three inches long, protruding vertically upward from the middle area of the outboard horizontal support, as a result of the "boost bar" having been previously sawed off at this point. This condition was known to both the steward and libellant at the time the bunk was assigned. This was the only bunk available for libellant, and no other bunk was ever made available for his use, nor was the defective condition corrected.

9. On August 6, 1944, while the vessel was in the port of Philadelphia, Pennsylvania, the ship's purser snapped on the lights in the steward's department forecastle at about one A.M., when libellant was asleep in his bunk, and ordered all hands on deck for inspection by the immigration authorities.

10. Libellant, aroused from his sleep, immediately descended from his bunk. As he was descending, his underwear caught on the protruding piece of metal, which caused him to fall to the deck, sustaining a severe jolt in the area of his right hip, side, and back.

11. Because of this fall, libellant was unable to perform his regular duties aboard ship for a period of four or five days during the eastward Atlantic crossing.

12. During the return voyage to the United States, on October 30, 1944, libellant was thrown against a mess table by a sudden lurch of the vessel during a gale, and again received a severe jolt in the region of his right hip.

13. Libellant did no work aboard ship from October 30, 1944 until the completion of the voyage on November 10, 1944.

14. Because of conditions over which respondents had no control, libellant did not secure medical attention at any of the European ports at which the vessel touched during the course of the voyage. He was furnished liniment and kidney plasters by the ship's purser to alleviate his pain.

15. Libellant entered the Marine Hospital at Baltimore, Maryland on November 29, 1944, and remained there under treatment as an in-patient until December 8, 1944. He convalesced at the Merchant Marine Rest Center, Bay Ridge, Maryland, from December 14, 1944, until January 9, 1945.

16. Because of his physical condition, libellant did not obtain employment until May 26, 1945, on which date he was employed as a truck driver by a Philadelphia beverage concern. He remained in that position until September 22, 1945, and earned a total of $722.77 during that period of employment.

17. Libellant secured a position as a templet maker on October 31, 1945, and has been employed in that capacity until the present time. He is now earning approximately $57 per week.

18. For many years prior to his entry into the United States Army, libellant's regular occupation during the Spring and Summer months, was that of baseball umpire. His last employment as an umpire was with the Piedmont Baseball League, for which libellant worked from July 1, 1941 through September 14, 1941. In that connection libellant earned a salary of $200 per month plus actual travelling expenses.

19. During the Fall and Winter months of the years prior to his entry into the United States Army, libellant had various business connections and worked at jobs which paid him approximately the same amount of money as he earned from umpiring during the baseball season.

20. The Piedmont Baseball League is presently paying its umpires a salary of $250 per month plus actual travelling expenses. The umpires are required to pay their board and lodging expenses out of their salary.

21. Prior to August 6, 1944, libellant suffered from a genito-urinary condition, and also had a minimal hypertrophic osteoarthritic condition in the skeletal structure of his lower lumbar and sacro-iliac area. However, neither of these conditions interfered with his physical activities during his waking hours, nor did they impair the functioning of his back or limbs in the discharge of his duties as a baseball umpire.

22. As a result of the accident sustained by libellant on August 6, 1944, his pre-existing arthritic condition was aggravated, and libellant now suffers from occasional instability in the sacro-iliac area with resultant partial restriction of motion and partial loss of sensation in his back and right leg, to the extent that he is now, and will continue to be in the future, unable to perform heavy manual labor or engage in continued strenuous physical activity.

23. The accident of August 6, 1944, was due to the negligence of respondents in permitting the existence of the defective condition of the bunk to which libellant was assigned on board the "John Philip Sousa."

24. The accident of October 30, 1944, was not occasioned by any negligence on the part of respondents.

25. As a result of the accident of August 6, 1944, libellant has sustained loss of earnings in the past in the amount of $2000.

26. A fair sum in compensation for libellant's pain and suffering resulting from the accident of August 6, 1944, is $1500.

27. Libellant at present is suffering no diminution of earnings by reason of his partial disability.

28. Libellant will suffer no diminution of future earnings by reason of his partial disability.

29. Libellant is entitled to an award of maintenance and cure for a period of 159 days at $3 per day, a total of $477.00.

### Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. Libellant is entitled to $3500 damages for loss of earnings and pain and suffering caused by the negligence of respondents.

3. Libellant is entitled to $477 maintenance and cure.

4. A decree will be entered in favor of libellant in the amount of $3977.